**OHIO STEAK & BARBECUE COMPANY, COLUMBUS, OHIO, Appellant, v. BOWERS, Tax Commissioner, Appellee.**

The Board of Tax Appeals, Department of Taxation, State of Ohio.

No. 33874.   Decided August 21, 1957.

Porter, Stanley, Treffinger & Platt, by J. Ralston Werum and William E. Arthur, for appellant.

William Saxbe, Atty. Genl., By John M. Tobin, Asst. Atty. Genl., for appellee.

## OPINION

This appeal presents the single question as to the life expectancy and annual depreciation rate allowable on appellant's tangible personal property used in its business as returned for taxation.

The taxpayer, in making its returns for the years 1953 and 1954, returned such property as manufacturing equipment with a life expectancy of 10 years and entitled to an annual depreciation rate of 10%. The Commissioner, in his order of February 5, 1957, upon the taxpayer's application for review and redetermination, held that this property had a life expectancy of 20 years and entitled to an annual depreciation rate of 5%. Appellant complains of the increased assessment resulting therefrom as being illegal and unreasonable.

The cause now comes on for further and final consideration upon the taxpayer's notice of appeal, the Commissioner's order and transcript, the record of hearing had before the Board under date of May 22, 1957, and briefs of counsel.

The law of the present case is well established by **Wheeling Steel Corp. v. Evatt, 143 Oh St 71, 28 O. O. 21,** and **Harper Co. v. Peck, 161 Oh St, 300, 53 O. O. 178.** It only remains for this Board to apply that law to the facts as herein found. The Tax Commissioner's directive of May 1, 1952, of which the Supreme Court has approved, which establishes Composite Prima Facie Depreciation Rates for valuing certain per-

sonal property used in business, provides that "Meat Packing" (slaughter and packing house), shall have an annual depreciation rate of 5%; "Abattoirs," 5%; "Packing" (meat), 5%, and "Slaughter House," 5%; "Restaurants, Cafes and Bars," 10%. These are the categories which are nearest related to appellant's business.

The taxpayer is engaged primarily in the processing of frozen meats. We are told that up to 2 or 3 years ago only two parties were engaged in this kind of business. There are now about fifty so engaged. Appellant buys hind quarters of beef, pork, turkeys and chickens from packing houses. It trims, slices, processes, seasons and packages these products and sells them to vendors of food. It grinds some meats and prepares it for hamburgers. It also makes soups and broths. When its products are delivered to restaurants and the like they are ready for instant use. When this business was developed there was no adequate machinery built to fit appellant's needs. It built some machines and used others, such as slicers and grinders found in groceries and meat markets. These machines were not designed for operation on frozen meats; and as a result of such use and continuous operation, they required frequent repair and diminished life use. The evidence is that the taxpayer's equipment, power units and compressors, receive hard usage, some machines as much as 24 hours a day. Some implements will process as much as 1,000 pounds a day, which is more than their total use in a week in a retail store. Water and acids are shown to be hard on appellant's equipment; and compressors designed for two-thirds time operation are operated at 100%. Salesmen of meat processing machinery corroborate this evidence, that their products are designed for ordinary 10-year life, but that appellant's use of these tools on frozen meats markedly shortens their life span.

We are also advised that competition in this business is now keen and that quantity production is very important; that tools usable by this industry are now being produced; in fact, one cannot predict what improved machines may be produced from day to day. By reason of this rapid rate of tool production, existing machines soon become obsolete and economically unusable and must be scrapped.

Appellant's president, one who helped initiate this business, says that 33% of the taxpayer's appliances have a life span of less than 5 years, 15% probably 10 years, 2% from 20 to 30 years, and that the remaining 50% of equipment has a life use of 8 to 10 years. None of this evidence has been controverted in any way by appellee.

Appellee strenuously complains in his brief that the taxpayer's evidence lacks positiveness, is speculative and indefinite; and that its evidence does not cover all of its property used in business. Appellee offered no evidence. He was satisfied with a cursory cross-examination. No other property was pointed out which was not covered by the evidence. Although appellant's evidence is not all that could be desired, it is sufficient for the purpose for which it was introduced. Appellee appears to be unmindful of the fact that his directive recites: "Such rates are prima facie only and are subject to adjustment in all cases where special or unusual circumstances or conditions of use are shown to exist."

From this evidence it is apparent that no particular item contained

in the directive fully meets appellants' business; that is, the processing of frozen meats for instant table use. In fact, five years ago, this industry was in its infancy, and could hardly have been within the contemplation of the compilers of the directive. From the evidence before us this Board must and does conclude that appellant's returned equipment, until such time as a study be made thereof, is entitled to a 10-year life span and a 10% annual depreciation rate as claimed by it. The increased assessment order complained of by the taxpayer must be and is hereby reversed.